IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |  |
|---|---|---|
| | * | |
| NATHAN A. EVANS, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Case No.: GJH-21-617 |
| | * | |
| CANTOR INSURANCE GROUP, LP, | | |
| | * | |
| Defendant. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

In this action, Plaintiff Nathan Evans brings breach of contract claims against Defendant

Cantor Insurance Group, LP. ECF No. 1. Presently pending before this Court is Defendant's

Motion to Transfer or, in the Alternative, to Dismiss. ECF No. 10.[1] A hearing on the Motion is

not necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the Court will

grant Defendant's request to transfer this action to the District of Delaware.[2]

I.      BACKGROUND[3]

At all relevant times, Plaintiff Evans served as President and CEO of Maple Life

Financial, Inc., and its successor, MLF Financial Group, LLC ("MLF"). ECF No. 1 ¶ 1.[4] In 2006,

_____

[1] Also pending is the Plaintiff's Consent Motion for Extension of Time to File an Opposition, ECF No. 11, which is granted.

[2] Because this Court will transfer the case to the District of Delaware, it does not consider Defendant's alternative argument that the Complaint should be dismissed.

[3] All facts herein are taken from Plaintiff's Complaint, ECF No. 1.

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Reservoir Capital Group, LLC, bought MLF and its entities. *Id.* ¶ 7.[5] Plaintiff signed an employment agreement with Reservoir at that time. The agreement provided that Reservoir would pay Plaintiff certain bonuses "based on percentages of MLF's annual net income." *Id.*

Later in 2006, Defendant Cantor bought 50% of MLF's LexServ business. *Id.* ¶ 8. LexServ is an entity of MLF that services insurance contracts for fees. *Id.* ¶ 6. Defendant Cantor and MLF formed a Delaware limited partnership called MLF LexServ, LP, to run the servicing business. *Id.* ¶ 8. MLF signed an agreement with MLF LexServ that provided that MLF would provide employees and administrative support, and LexServ would pay MLF to run the business. *Id.* The agreement also provided that MLF LexServ would pay MLF 25% of the "aggregate salary, benefits, and cash bonus" paid to three senior executives or their successors. *Id.* Defendant Cantor and Reservoir agreed that the MLF LexServ Board would consist of a Reservoir representative, a Cantor representative, and Plaintiff. *Id.* ¶ 9. Thus, as relevant here, Plaintiff served as a LexServ board member, and 25% of his compensation was paid by LexServ. *Id.* ¶ 10.

Plaintiff claims that though MLF LexServ was only obligated to pay 25% of Plaintiff's compensation, Defendant Cantor incentivized Plaintiff's continued employment by also promising to match "all bonus compensation arrangements" that Plaintiff was paid by Reservoir. *Id.* ¶ 10. According to Plaintiff, Stuart Hersch, Defendant Cantor's former representative on the MLF LexServ Board, promised that Cantor would "take the necessary steps" to ensure that Plaintiff was paid these bonuses: "Hersch promised that Cantor would take the necessary steps to pay from its 50% share of MLF LexServ the same share of its profits to Evans that Reservoir had agreed to pay Evans." *Id.*

---

[5] Reservoir is not a party to this litigation.

Plaintiff assented to and relied on these representations as an oral contract with Defendant Cantor. *Id.* ¶ 11 ("First Oral Contract"). Plaintiff claims that he annually provided Defendant Cantor with information about the bonuses he received from Reservoir, and, "[a]s Cantor's representative, Hersch honored Cantor's promises" by having Cantor match Reservoir's bonus compensation formulas. *Id.* ¶ 14. In 2019, Defendant Cantor named Paul Pion as its MLF LexServ board member. Plaintiff alleges that Pion was aware of the prior promise and voted for resolutions approving bonuses for Plaintiff. *Id.* ¶ 15. In 2019, Plaintiff signed a new employment agreement with Reservoir affiliate MLF Financial Group, LLC, which provided that Plaintiff would receive a percentage of Reservoir's net proceeds in the event of a sale. *Id.* ¶ 18. Around this same time, Plaintiff also contacted Cantor representatives about formally documenting their bonus match agreement but was rebuffed. *Id.* ¶ 19.

In 2020, Reservoir and Cantor began negotiations to sell the Maple Life businesses to an outside party. *Id.* ¶ 27. Plaintiff negotiated with Reservoir to receive an increased percentage of the net proceeds in return for working after a sale. *Id.* Plaintiff then asked Pion to honor the First Oral Contract and confirm that Cantor would pay the same percentage of Cantor's net proceeds to Plaintiff in the event of a sale. *Id.* ¶ 29. Plaintiff claims that Pion repeatedly assured him that Cantor would make the proportionate payment but would not put any confirmation in writing. *Id.*

In the summer and fall of 2020, the Reservoir and Cantor began negotiating with Longevity Holdings, Inc., for the sale of Maple Life companies. *Id.* ¶¶ 26, 30.[6] Plaintiff took part in the negotiations and often intervened when there were disputes between Reservoir and Cantor regarding the sale. *Id.* ¶ 30. Plaintiff alleges that when he intervened on Cantor's behalf, he often reminded Cantor of its promise to pay him a proportional transaction bonus. *Id.*

---

[6] Longevity is not a party to this litigation.

3

Disputes arose between Reservoir and Cantor while they were negotiating the sale, so Cantor and Reservoir separately negotiated a Letter Agreement. *Id.* ¶ 31 ("Side Letter"). The Side Letter documented fund allocation between the seller parties, made some provisions for retention and transaction bonuses related to the sale, and designated which parties were responsible for making contributions to the escrows. *Id.* ¶¶ 36, 37. Plaintiff and other MLF executives signed the Side Letter. *Id.* ¶ 31.

Around the time he became a signatory to the Side Letter, Plaintiff again sought confirmation that Cantor would make a transaction bonus to him after the sale. Pion again acknowledged the agreement but refused to put it in writing. *Id.* ¶ 32. Plaintiff alleges that this is a second oral agreement because it was an independent contractual promise that Cantor would pay Plaintiff proportionate sale proceeds. *Id.* ¶ 33 ("Second Oral Contract"). Plaintiff agreed to and relied on this Second Oral Contract by continuing to work on the sale to Longevity. *Id.* ¶ 34.

In September 2020, Longevity bought MLF and LexServ for $30 million. *Id.* ¶ 36. After the close of the sale, in the fall and winter of 2021, Plaintiff followed up with Cantor several times about the transaction bonus. *Id.* ¶¶ 41, 43. Pion continued to assure Plaintiff that everyone at Cantor was on board with the deal but that Pion was having trouble scheduling an approval meeting. *Id.* ¶ 44. In January 2021, Pion stopped responding to Plaintiff, and Cantor never paid Plaintiff the promised transaction bonus. *Id.* ¶ 48.

Plaintiff filed his Complaint on March 10, 2021. ECF No. 1. In Count I, Plaintiff alleges that Defendant Cantor breached the First Oral Contract by "refusing to pay Evans the same proportionate share of its proceeds from the Longevity purchase of the Maple Life entities that Reservoir paid Evans from its share." *Id.* ¶ 51. Plaintiff claims that he suffered damages of $975,000. *Id.* ¶ 52.  In Count II, Plaintiff alleges that "Cantor breached the Second Oral Contract

4

by refusing to pay Evans the same proportionate share of its proceeds from the Longevity

purchase of the Maple Life entities that Reservoir paid Evans from its share." *Id.* ¶ 54. Evans

claims he has suffered $975,000 in damages as a result of the breach of the second agreement. *Id*.

¶ 55.[7]

Plaintiff contends that this Court has diversity jurisdiction over the dispute, *see* 28 U.S.C.

§ 1332, and that venue is proper in this district because a "substantial part of the events giving

rise to the claim occurred in Montgomery County, Maryland." ECF No. 1 ¶ 5. On May 14, 2021,

Defendant Cantor filed this Motion to Transfer or, in the Alternative, to Dismiss. ECF No. 10.

Cantor argues that a forum selection clause in the Side Letter governs Plaintiff's claims and thus,

this case must be transferred to the District of Delaware. *Id.*

## II.    DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any

other district or division where it might have been brought or to any district or division to which

all parties have consented." Section 1404(a) thus "permits transfer to any district where venue is

also proper . . . or to any other district to which the parties have agreed by contract or stipulation.

Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that

point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of*

*Texas*, 571 U.S. 49, 59 (2013). "[A] valid forum-selection clause . . . 'represents the parties'

agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*,

487 U.S. 22, 31 (1988)). "For that reason, and because the overarching consideration under

---

[7] Plaintiff also alleged a breach of good faith and fair dealing in Count III and sought a declaratory judgment that the Side Letter does not control the oral contracts in Count IV. ECF No. 1 ¶¶ 58, 61. In his Opposition to Defendant's Motion, Plaintiff concedes that Count III cannot stand independent from his breach of contract claims and that Count IV is moot given defenses raised by Cantor based on the Side Letter. *See* ECF No. 12 at 16.

Section 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine Const. Co.*, 571 U.S. at 62–63 (quoting *Stewart Org., Inc.*, 487 U.S. at 33)).

"[A] federal court interpreting a forum selection clause must apply federal law in doing so. As an agreement purporting to modify or waive the venue of a federal court, a forum selection clause implicates what is recognized as a procedural matter governed by federal law—the proper venue of the court." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010); *see also Milani Constr., LLC v. City of Frederick, Maryland*, No. 20-cv-2944-JKB, 2021 WL 766846, at *4 (D. Md. Feb. 26, 2021) ("Because forum selection clauses 'implicate the appropriate venue of a court,' which is a procedural issue, courts 'apply federal common law favoring the enforcement of forum selection clauses when interpreting contracts that contain forum selection clauses.' This means that, even in diversity cases, a 'federal court interpreting a forum selection clause must apply federal law in doing so.'") (quoting *Albemarle Corp.*, 628 F.3d at 650)). However, if the contract also includes a choice-of-law provision, the choice-of-law indicated gives context to the forum-selection clause. *Albemarle Corp.*, 628 F.3d at 649.

"[A]s a general matter[,] federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." *Albemarle Corp.*, 628 F.3d at 649. "This presumption of enforceability, however, only applies if the forum selection clause is mandatory rather than permissive." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018). In addition, the presumption of enforceability may also be overcome by a clear showing that the provision is "'unreasonable under the circumstances.'" *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

Before enforcing the forum selection clause in the Side Letter, this Court must determine three issues. *Open Text Corp. v. Grimes*, 262 F. Supp. 3d 278, 287 (D. Md. 2017) (describing a "three-part test to determine whether a forum selection clause . . . is enforceable"); *see also CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 771 (D. Md. 2009). First, this Court must determine whether the forum selection clause is mandatory or permissive. *Albemarle Corp.*, 628 F.3d at 651. Second, this Court must determine whether Plaintiff's claims are within the scope of the forum selection clause. *Open Text Corp*, 262 F. Supp. 3d at 287; *Olawole v. Actionet, Inc.*, No. 16-cv-3506-PX, 2017 WL 1230821, at *2 (D. Md. Apr. 4, 2017). Last, this Court must determine whether it would be unreasonable to enforce the forum selection clause. *Albemarle Corp.*, 628 F.3d at 651; *see also Ripley v. Long Distance Relocation Servs., LLC*, No. 19-cv-0373-CCB, 2019 WL 5538343, at *2 (D. Md. Oct. 25, 2019) ("Once the forum selection clause is determined to be valid, mandatory, and encompassing of the plaintiff's claims, the plaintiff bears the burden of 'showing why the court should not transfer the case to the forum to which the parties agreed.'") (quoting *Atlantic Marine*, 571 U.S. at 64)).

There are two sections of the Side Letter that are relevant here.[8] Paragraph 5(d) of the Side Letter provides:

> This Agreement, the rights of the parties hereto hereunder and all claims and actions arising in whole or in part under or in connection herewith, will be governed by and construed and enforced in accordance with the domestic substantive laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

ECF No. 10-3 at 4–5.

---

[8] Plaintiff quotes from the Side Letter in his Complaint. *See* ECF No. 1 ¶¶ 37, 39. Defendant provides the full Side Letter as an exhibit to this Motion. *See* ECF No. 10-3 (Exhibit 1). This Court considers the full Side Letter in its analysis. The Side Letter was "integral to and explicitly relied on in the Complaint" and Plaintiff does not challenge the Side Letter's authenticity. *Phillips v. LCI, Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Paragraph 5(e) provides:

> Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the sole and exclusive jurisdiction of the Court of Chancery of the State of Delaware or, if such state court declines jurisdiction, of any federal court located in Wilmington, Delaware (the 'Chosen Courts') for any litigation arising out of or relating to this Agreement, or the negotiation, validity or performance hereof, or the transactions contemplated hereby (and agrees not to commence any litigation relating thereto except in such courts), waives any objection to the laying of venue of any such litigation in the Chosen Courts and agrees not to plead or claim in any Chosen Court that such litigation brought therein has been brought in any inconvenient forum.

ECF No. 1 ¶ 39; ECF No. 10-3 at 5.

There is no dispute as to the first and third steps of the analysis. Plaintiff does not argue that the forum selection clause is merely permissive.[9] He also concedes that he "does not allege fraud, overreaching, or any other escape hatch" that would make enforcement of the clause unreasonable. ECF No. 12 at 7.[10] Instead, the sole dispute here concerns step two—whether Plaintiff's claims fall within the ambit of the Side Letter.

As an initial matter, the parties disagree as to the law to be applied when analyzing the scope of a forum selection clause. *See* ECF No. 12 at 6; ECF No. 13 at 3. Some circuits have clarified that analysis of the enforceability of a clause, which encompasses whether the clause is

---

[9] A forum selection clause is mandatory if it "contains specific language of exclusion." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (internal quotations and citations omitted). Here, the forum selection clause states that the parties "irrevocably and unconditionally" consent to the "sole and exclusive jurisdiction" of either Delaware's Court of Chancery or any federal court sitting in Wilmington, Delaware. ECF No. 1 ¶ 39. It is mandatory.

[10] "Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (internal quotations and citations omitted).

mandatory and whether it is reasonable, is separate from interpretation of a clause, which

includes the scope of the clause. *See Martinez v. Bloomberg, LP*, 740 F.3d 211, 224 (2d Cir.

2014) ("[Q]uestions of enforceability are resolved under federal law, while interpretive

questions—questions about the meaning and scope of a forum selection clause—are resolved

under the substantive law designated in an otherwise valid contractual choice-of-law clause."); *In*

*re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) ("Federal law

controls the question of whether to enforce a forum selection clause. However, the interpretation

of a forum selection clause is an analytically distinct concept from the enforceability of that

clause. The question of the scope of a forum selection clause is one of contract interpretation.")

(internal quotations and citations omitted).

While the Fourth Circuit has not made such an analytical distinction, it has clarified that a

court must consider a choice-of-law clause when analyzing the forum selection clause. *See*

*Albemarle Corp.*, 628 F.3d at 650. "[W]hen a court is analyzing a forum selection clause, which

changes the default venue rules applicable to the agreement, that court will apply federal law and

in doing so, give effect to the parties' agreement." *Id.* But while the reviewing court applies

federal common law, the court must also "analyze th[e] contract as one that contains both a

choice of law clause and a forum selection clause." *Id.* at 649. A forum selection clause must be

"taken in context" of the choice-of-law provision. *Id.* at 651.

Here, the Side Letter states that it is governed by the laws of Delaware. ECF No. 10-3 at

4. While this choice-of-law clause informs the Court's analysis, it does not change it. Whether

reviewing Fourth Circuit precedent or Delaware state law, the analysis is substantively the same:

this Court must use "general principles of contract interpretation" in analyzing the meaning of

the forum selection clause. *Martin v. Ball*, 326 F. App'x 191, 194 (4th Cir. 2009) (citing

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006) (abrogated on

other grounds)). The words in the forum selection clause will be construed given their "plain

language." *Bartels by & through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 674 (4th

Cir. 2018); *see also Online Healthnow, Inc. v. CIP OCL Invs., LLC*, 2020 WL 3047230, at *2

(Del. Super. Ct. May 28, 2020) ("Under Delaware law, the Court may interpret an unambiguous

contract as a matter of law by giving clear and unambiguous terms their plain and ordinary

meaning.").

Plaintiff has two claims: first, that under the First Oral Contract, Cantor promised to

match "all bonus compensation arrangements that Reservoir paid[,]" ECF No. 1 ¶ 10, and

second, that under the Second Oral Contract, Cantor specifically promised to match Reservoir's

transaction bonus related to the sale, *id.* ¶ 33. The heart of Plaintiff's claims is that Cantor failed

to perform on either oral contract by failing to match Reservoir's transaction bonus. The issue

then is whether this dispute falls under the Side Letter and is subject to its forum selection clause.

The key provision for scope interpretation is Paragraph 5(e), which states the forum

selection clause applies to "any litigation arising out of or relating to this Agreement, or the

negotiation, validity or performance hereof, or the transactions contemplated hereby[.]" ECF No.

1 ¶ 39. Defendant argues that the Side Letter provides for allocation of proceeds related to the

sale to Longevity. ECF No. 13 at 2–3. To Defendant, Plaintiff's "claims for a transaction bonus

are thus logically and naturally related to the Side Letter's subject matter," which was "the

Longevity Sale and Cantor's payment obligations related to the sale." *Id.* In addition, Defendant

notes that the Side Letter also provided for sale bonuses to executives and that Plaintiff is a

signatory to the Side Letter. *Id.* at 3. Plaintiff contends that the "Side Letter's purpose and

subject matter was to allocate closing proceeds between Reservoir and Cantor[,]" that he does

"not allege any breaches of the Side Letter[,]" and that his "claims would be the same regardless of whether the Side Letter existed or not." ECF No. 12 at 9.

Language indicating that a clause governs litigation "arising out of or relating to" the agreement is generally construed broadly. *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001); *see also Bartels by & through Bartels*, 880 F.3d at 678 (a forum selection clause covering claims that "arise out of or in connection with" the agreement has broad scope); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (an arbitration clause with language that it covered disputes that "ar[ose] out of or related to" the agreement was "capable of expansive reach"); *Kentwool Co. v. NetSuite, Inc.*, 2014 WL 12681605, at *5 (D.S.C. Dec. 1, 2014) (finding that a forum selection clause with language that it covers "[a]ny disputes, actions, claims or causes of action arising out of or in connection with this Agreement" was "quite broad").

Because a forum selection clause may also encompass claims related to the agreement, a plaintiff's claims need not be for breach of the agreement itself. *Bartels by & through Bartels*, 880 F.3d at 678. Instead, a court looks to whether there is a relationship between the agreement and the dispute. *Id.* (finding that a statutory claim was within the scope of a forum selection clause in a residency agreement because the statute "imposes standards that an assisted-living facility must meet when providing services to its residents, and it is the contract with the resident that obligates the facility to provide those services in the first instance. The claims that [defendants] violated the statute thus bear a significant relationship to the residency agreements and fall within the scope of the forum-selection clause."); *see also SeaCast of Carolinas, Inc. v. Premise Networks, Inc.*, 2009 WL 5214314, at *3 (D.S.C. Dec. 28, 2009) ("Fourth Circuit district court opinions are consistent with the majority of decisions from other circuits that have

addressed this issue and have consistently ruled that a reasonable forum selection clause applies

not only to contract claims, but to contract-related claims as well.").

With these principles in mind, this Court finds that Plaintiff's claims are governed by the

forum selection clause. The forum selection clause covers "any litigation arising out of or

relating to this Agreement, or the negotiation, validity or performance hereof[.]" ECF No. 1 ¶ 39.

In addition, the forum selection clause also includes further broadening language that the clause

also applies to "transactions contemplated" by the Side Letter. *Id.* ¶ 39; *see, e.g.*, *Bartels by &*

*through Bartels*, 880 F.3d at 678 ("The 'in connection with' language broadens the scope of the

clause beyond pure contract claims and extends it to every dispute between the parties having a

significant relationship to the contract regardless of the label attached to the dispute.") (internal

quotations and citations omitted). The Side Letter purported to set out the responsibilities of

Reservoir, Defendant Cantor, and Plaintiff (among other parties) regarding the allocation of

proceeds and transaction expenses from the sale of Maple Life. *See* ECF No. 1 ¶ 38. The "subject

matter" of the Side Letter is thus the allocation of responsibilities and proceeds between the

seller parties. Plaintiff's claims, which are, at base, that he did not receive his promised

transaction bonus from the sale, are related to that "subject matter." In addition, his transaction

bonus was also "contemplated" by the Side Letter. The Side Letter provides for sale bonuses to

several executives, including a retention bonus to Plaintiff and a transaction bonus for another

executive. *See* ECF No. 10-3 at 4. Thus, the agreement did "contemplat[e]" transactions such as

the one that Plaintiff says he is owed. *Id.*

Plaintiff argues that his claims do not depend on the Side Letter and are therefore not

governed by it, ECF No. 12 at 9, but, as detailed above, it not necessary for the claims to

"depend" on an agreement or for the plaintiff to be claiming a breach of an agreement. Similarly,

Plaintiff makes an argument that the Side Letter does not control all other transactions between the parties: "The Side Letter's 'subject matter' was not to document or agree to all payments Reservoir or Cantor would make to Evans after execution of the Side Letter. Evans continued to work for Maple Life after execution of the Side Letter, receiving ordinary salary and benefits." ECF No. 1 ¶ 38. If Plaintiff had instead brought a claim related to his salary and not the sale, for instance, he would be correct; the Side Letter would not govern an unrelated employment claim. *See, e.g.*, *Open Text Corp.*, 262 F. Supp. 3d at 288 ("Although defendants properly note that [a forum selection clause] may encompass both contractual and non-contract-based claims, the wrongful acts . . . were outside the scope of his employment and, thus, not 'relating to'" the employee agreement). But here, the claimed breach of the oral contracts is specifically related to the allocation of proceeds after the sale. While it may be true that the Side Letter does not include every arrangement related to the sale, that is an argument that goes to the merits of Plaintiff's claims—not to whether the claims fall under the scope of the forum selection clause.

In addition, it does not matter that at least one of the oral contacts precedes the Side Letter. The clause covers "any litigation of or relating to this Agreement" and has no time restriction. ECF No. 1 ¶ 39. Therefore, the clause could cover claims involving conduct that pre-dates the Side Letter. *See, e.g.*, *White Oak Power Constructors v. Alstom Power, Inc.*, No. 17-cv-1437-CCB, 2017 WL 5158507, at *3 (D. Md. Nov. 7, 2017) (finding that forum selection clauses could "encompass pre-execution conduct" because the clauses referred to "'*[a]ny* legal action or proceeding *with respect to* this Agreement' and 'actions or proceedings *arising out of or in connection with* this Agreement'") (emphasis in original).

Because the Side Letter's forum selection clause is mandatory, Plaintiff's claims fall under its scope, and Plaintiff does not argue that the forum selection clause is unreasonable, this

Court must "transfer the case to the forum specified in that clause[.]" *Atl. Marine Const. Co.*. 571

U.S. at 62. The forum selection clause provides that the case may be heard in "any federal court

located in Wilmington, Delaware[.]" ECF No. 1 ¶ 39.[11] This Court must transfer this case to the

District of Delaware.

## III.    CONCLUSION

For the reasons discussed, the Motion to Transfer is **GRANTED**. A separate Order follows.

Dated:  October      25, 2021                        /s/

                                                        GEORGE J. HAZEL
                                                        United States District Judge

---

[11] The Fourth Circuit has noted a distinction between forum selection clauses that specify a "sovereignty limitation" and those that have a "geographic limitation." *Bartels by & through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 676 (4th Cir. 2018). Because the court must give effect to the parties' agreement as expressed through their plain language, these limitations can control whether a court must transfer or remand a case. *Id.*; *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010). Here, the forum selection clause offers two alternatives: it states that Delaware's State Court of Chancery has jurisdiction but that "if such state court declines jurisdiction," then "any federal court located in Wilmington, Delaware" has jurisdiction. ECF No. 1 ¶ 39. The clause labels both the Delaware Court of Chancery and the federal courts located in Wilmington, Delaware, as the "Chosen Courts" for disputes related to the Side Letter. *Id.* Reading the clause as a whole and giving effect to the parties' plain language, transfer to the District of Delaware, a federal court located in Wilmington, is proper.