**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NATHAN ARTHUR EVANS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-1618-MAK |
| | : | |
| CANTOR INSURANCE GROUP, LP. | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                    August 30, 2022

An experienced business executive agreed to sell his minority ownership interest in an insurance business, along with the other owners of the insurance business including two commercial entities and other employees. He claims he relied on a representation by one of the entity co-sellers to pay him a sizable post-closing transaction bonus when he agreed to sign a Side Letter Agreement in connection with his sale of the ownership interests confirming the entity co-owners did not owe him a post-closing transaction bonus. The executive does not plead the date or medium of this alleged promise. There is no written evidence defining this promise. The only written agreement (the Side Letter Agreement) does not include this promise of a transaction bonus to the executive but does include a transaction bonus to another individual seller. The entity seller did not pay him a transaction bonus after he signed the Side Letter Agreement and sold his interests.

The executive now sues this entity seller for promissory fraud. The entity seller denies representing it would pay the executive a transaction bonus as confirmed by the sellers' Side Letter Agreement defining the agreed disbursement of the sale proceeds. The Side Letter Agreement also confirms the executive agreed there is no other promise or representation between the sellers relating to the multi-million-dollar sale of the insurance business to a new buyer.

The entity seller now moves to dismiss this promissory fraud claim against it. We grant the entity seller's motion to dismiss without prejudice to the executive being allowed a second chance to plead fraud with the specificity necessary to establish a fraudulent promise by the entity seller with the intent to induce him to sign a Side Letter Agreement. The executive needs to plead facts consistent with Rule 11 allowing us to find it plausible he signed the Side Letter Agreement based upon the entity seller's specific representation notwithstanding the executive's and his co-sellers' agreement there is no other promise to pay him a transaction bonus. He also needs to plead his justifiable reliance on an undated oral promise and how this promissory fraud causing him to sign the Side Letter Agreement then caused him damages.

## I.     Alleged facts relating to a promissory fraud theory.

Nathan A. Evans managed sophisticated businesses since at least 2006. He performed a leading role in an insurance contract servicing entity known as MLF LexServ, LP  Two entities, Cantor Insurance Group, LP and Reservoir Capital Group, LLC, owned equal sizable interests of LexServ and controlled its operations. Mr. Evans and other executives also owned small ownership interests in LexServ. Mr. Evans served as one of three members on the LexServ Board of Directors along with Cantor representative Paul Pion. Cantor and Reservoir paid equal compensation to Mr. Evans over the years under some form of oral understanding to split his compensation.

Cantor and Reservoir decided to sell LexServ in 2019. Longevity Holdings Inc. expressed interest in purchasing LexServ in early 2020. Longevity wanted Mr. Evans to stay with LexServ. Reservoir agreed to pay Mr. Evans 10.8% of Reservoir's proceeds it earned from a sale to Longevity as a transaction bonus. Mr. Evans wanted Cantor to do the same consistent with its payment of compensation equal to Reservoir's payments to him over the past several years. Mr. Evans repeatedly asked Cantor to confirm it would pay him a transaction bonus just like Reservoir

agreed. Cantor would not sign an agreement confirming it would pay a post-closing transaction bonus. Mr. Evans told Cantor he would not stay with the firm post-closing without Cantor paying him the same post-closing transaction bonus as Reservoir. Mr. Evans continued to press for a promise Cantor would pay a transaction bonus from the closing in the same manner as Reservoir. Cantor knew Mr. Evans wanted a transaction bonus from Cantor "proportional" to the one Reservoir agreed to pay and Cantor knew Director Pion told him Cantor "would consider" the transaction bonus.

Cantor "knowingly encouraged" its LexServ Director Pion at an unknown time to falsely assure Mr. Evans of a post-closing payment from Cantor. Cantor did not intend to honor earlier alleged promises "it would consider" Mr. Evans's claims for a transaction bonus after closing the deal with Longevity.[1] Cantor's Board representative Director Pion promised Mr. Evans – at some unknown time before the sale to Longevity and in some undisclosed fashion –Cantor "would make a proportional payment" to him post-closing but Cantor would not put its agreement in writing.[2]

Cantor and Reservoir separately disputed who would pay the expenses and incur indemnification obligations arising from the closing with Longevity. The attorney representing LexServ asked Mr. Evans to sign a side letter at closing as one of the sellers of ownership interests in LexServ agreeing as to how the sellers including Reservoir and Cantor would allocate expenses and indemnification obligations arising from closing. This Side Letter Agreement dated the same day as the Longevity closing governed payment of escrow funds and indemnification at the Longevity closing including confirming the LexServ sellers would allocate ten million of the thirty-million-dollar aggregate cash payment to Cantor. The Sellers, including Reservoir, Cantor, and Mr. Evans agreed, among other things, for Cantor to pay $112,500 of Mr. Evans' retention

bonus payment plus 12.5% of another executive's "transaction bonus." The Sellers did not mention a transaction bonus payable to Mr. Evans in the Side Letter Agreement.

Mr. Evans agreed to sign the Side Letter Agreement with Reservoir and Cantor even without the reference to a transaction bonus for him in a document. He also still signed the Side Letter Agreement which he agreed superseded all earlier agreements and understandings both written and oral between the sellers with respect to the transactions contemplated in the Securities Purchase Agreement.[3] Mr. Evans signed the Side Purchase Agreement representing he knew he could not enforce any other promise or representation between the sellers relating to the sale to Longevity.[4]

Longevity purchased LexServ's interests. Cantor ultimately refused to pay a post-closing transaction bonus to Mr. Evans. Cantor argued Mr. Evans already agreed the compensation detailed in the Side Letter Agreement constituted the entire agreement and understanding between Cantor and Mr. Evans relating to Longevity buying all the ownership interests in the company. Cantor argued it owed no further obligation to Mr. Evans beyond the Side Letter Agreement.

Mr. Evans sued Cantor for breach of oral contracts to pay him compensation equal to what Reservoir paid him. We dismissed his contract theories against Cantor based on the integration clause in the Side Letter Agreement in our May 25, 2022 Order and Memorandum.[5] We granted Mr. Evans leave to amend if he could plead an alternative theory.[6] Mr. Evans now apparently seeks the same damages under a promissory fraud theory based on two alleged representations made by Cantor not tied to a date, location, or medium: (1) an unidentified person at Cantor "knowingly encouraging" Director Pion at unknown times to falsely assure Mr. Evans of a transaction bonus; and, (2) Director Pion told Mr. Evans on an unpleaded date through an unpleaded medium Cantor agreed to pay a post-closing transaction bonus "proportional" to Reservoir's payment to him.

## II.   Analysis

Cantor now moves to dismiss the fraud-based claim.[7] Cantor argues, among other things, Mr. Evans fails to specifically plead the elements of a fraud claim, the transaction agreements contain explicit anti-reliance provisions barring Mr. Evans' fraud claim, and the fraud claim merely "rehashes" the dismissed breach of contract claims.

We agree with Cantor as to Mr. Evans's failure to plead Cantor's fraudulent statement and intent inducing justifiable reliance.[8] We grant Cantor's motion to dismiss but grant Mr. Evans a second chance to plead the level of fraud, justifiable reliance, and resulting damage required under Delaware law if he can do so consistent with Rule 11.

Cantor argues Mr. Evans failed to sufficiently plead the elements of a fraudulent inducement claim consistent with the heightened pleading standards required by Rule 9(b). To state a claim for fraud under Delaware law, Mr. Evans must allege: "1) a false representation, usually one of fact ...; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance."[9] Rule 9(b) requires a pleading of fraud "with particularity" and allegations of "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation."[10]

We need to clarify exactly what we understand Mr. Evans is claiming: Cantor, through its Director Pion, made a false promise it "would" pay a transaction bonus payment after closing proportionate to the payment Reservoir agreed to make; Cantor is liable for Director Pion's false promise either because it did not intend to honor the promises it "would consider [Mr.] Evans's claims for payment after the Longevity deal closed" or "knowingly encouraged" Director Pion in

5

2020 to falsely assure Mr. Evans it "would" make a post-closing payment.[11] Mr. Evans pleads circumstantial evidence such as earlier promises made regarding compensation by former Cantor executives and the absence of a release in the Side Letter Agreement.

We begin by reminding Mr. Evans we cannot allow a fraud theory based on Director Pion's alleged representation Cantor "would consider" a post-closing transaction payment from it proportional to Reservoir's agreed payment. Mr. Evans does not plead Cantor did not "consider" the payment; he instead attempts to plead Cantor considered it and secretly decided to not pay it but to still induce him to sign the Side Letter Agreement without knowing Cantor already considered his request and decided against honoring his request.

Mr. Evans now needs to plead what Cantor said to him to allow him to justifiably rely on his understanding Cantor would pay a post-closing transaction bonus notwithstanding Mr. Evans confirming there are no other promises or representations other than those in the Side Letter Agreement.

Mr. Evans's reliance upon promissory statements, expressions of what will happen in the future, requires he plead "particularized facts" allowing us to infer Cantor had no intention of keeping the alleged promise of considering paying him a transaction bonus at the time of Director Pion's alleged statements.[12] We must be able to find particularized facts Cantor had no intention of considering paying a transaction bonus when Director Pion made the statements. The factual predicate of a promissory fraud claim is Cantor's state of mind at the time the statement is made; a general averment of a culpable state of mind is insufficient. Mr. Evans must plead "specific facts" leading to a reasonable inference that Cantor had no intention of performing at the time of the promise.[13]

Mr. Evans must also be able to plead specific facts as to the timing of the false representation. He cannot simply plead a statement made at an unknown time in an unknown medium and meet the specificity required by Rule 9(b). Mr. Evans pleads Director Pion made a statement but nothing further. We do not know when or through what medium. We pressed Mr. Evans' counsel during oral argument as to when these statements occurred, and he could not tell us other than supposing they occurred within a few weeks of the Side Letter Agreement.

We are particularly persuaded by Vice Chancellor Zurn's analysis three years ago in *Dunn v. FastMed Urgent Care, P.C.* In *Dunn*, a licensed physician working at a company left his job after a merger with another company. The physician claimed the new merger partner defrauded him in negotiating the terms of his employment and asserting a restrictive covenant in a contract selling the physician's interest in the post-acquisition company. The physician refused to sign a Letter of Transmittal to sell his interests in an urgent care business because he disagreed with the scope of a non-compete clause in the purchase agreement and plan of merger. When the physician raised his concern with the non-compete, the buyer's representatives told the physician the Letter of Transmittal's non-compete would be re-drafted after the merger closed.[14] Based on this representation, the physician signed the Letter of Transmittal. The post-merger owner then sought to enforce the non-compete against the physician. The physician claimed negligent misrepresentation and fraud, alleging the buyers made statements to induce him to sign the Letter of Transmittal and be subject to its non-compete clause.[15]

Vice Chancellor Zurn found the physician failed to state a claim for fraud because he failed to plead specific facts to support a claim of fraud based on promissory statements and failed to plead the other elements of fraud with particularity under Rule 9(b). Vice Chancellor Zurn explained when a fraud claim is based on promissory statements, or expressions of what will

happen in the future, a plaintiff must plead "particularized facts" under Delaware law allowing a court to infer the speaker had "no intention" of keeping the promise at the time made.[16] This is because "statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud" and "[t]o anticipate the future and predicate falsehood upon an act to be done or omitted at a future day would change a mere broken promise into a fraud on the part of him who was bound to fulfill the engagement …."[17] The physician based his fraud claim on an oral agreement with the buyer to amend the restrictive covenant in the future after the Letter of Transmittal had been signed and the defendant buyers' "statements that contradicted the written terms were promises to deviate from those terms in the future."[18] Vice Chancellor Zurn found "[w]ithout a proper pleading of intent, these promissory statements cannot support [the physician's] fraud claim."[19] And, because the physician failed to plead specific facts to reasonably infer the defendants "had no intention of performing at the time of their promises," the physician failed to state a claim.[20]

We also find no pleading from Mr. Evans suggesting a plausible basis for his justifiable reliance. In *Black Horse Capital, LP v. Xstelos Holdings, Inc.*,[21] Vice Chancellor Parsons addressed a similar situation where parties sued each other after an acquisition alleging oral promises as to post-closing conduct at some unspecified time. Plaintiffs alleged an oral promise served as a precondition to their willingness to make a bridge loan necessary to finance the acquisition. The parties signed agreements on the day of closing making no reference to any earlier promise or agreement such as the one alleged by the plaintiffs and the written agreements signed at closing contained integration clauses confirming no other understandings or agreements. The plaintiffs sued for fraudulently inducing them to sign the acquisition agreements. The plaintiffs did not persuade Vice Chancellor Parsons they pleaded fraud realizing a post-closing conduct not

complying with pre-closing alleged oral representations. Vice Chancellor Parsons found it is not "reasonably conceivable" plaintiffs could prove a claim for fraudulent inducement based upon representations. Vice Chancellor Parsons found no case which any court reviewing justifiable reliance in a promissory fraud claim has been satisfied an oral representation can proceed when it directly conflicts with the plain language of a subsequent written agreement.

Mr. Evans argues the Side Letter Agreement does not address Cantor's alleged obligation to him. He argues the Side Letter Agreement only addresses the obligations between the sellers as to allocation of expenses and indemnification responsibilities. He appears to be missing the point. Mr. Evans does not presently plead how he could justifiably rely upon the alleged representation given both this specific language in the Side Letter Agreement as to no earlier written representations or promises relating to any transaction contemplated by the Securities Purchase Agreement or why he would rely upon Director Pion's statement Cantor "would consider" making a proportionate post-closing payment to Mr. Evans. Mr. Evans does not plead what "proportionate" means in this context. He fails to plead how he could justifiably rely upon this representation given the Side Letter Agreement's integration clause.

We are also not persuaded by Mr. Evans's reliance on statements made by a former Cantor executive Stuart Hersch or of the absence of a release. Mr. Hersch could not bind Cantor at this time. A release would appear redundantly unnecessary given the integration clause at least as it may apply to Mr. Evans's present claims. We are not confident Mr. Evans can do so given his attorney's admissions during oral argument but we will grant him leave to attempt to plead more specificity as to the alleged promissory fraud.

We also cannot discern a basis for damages from the alleged promissory fraud. Mr. Evans pleads he suffered damages "[a]s a result of Cantor's successful arguments that the Side Letter

Agreement's integration clause extinguished [Mr.] Evans['s] claims against Cantor for matching compensation."[22] We are unclear if he claims our May 25, 2022 Order enforcing the integration clause as applied to his contract claims somehow offers him a remedy against Cantor. We are clear he never pleads the integration clause would not apply as a matter of law.

We do not understand damages from signing the Side Letter Agreement with an integration clause. Is Mr. Evans claiming Cantor must pay him the same transaction bonus as Reservoir because, had he known Cantor did not intend to pay him, he would not have signed the Side Letter Agreement with integration clause? Is he claiming Cantor and the other sellers would have removed the integration clause and still proceeded to closing? Is he claiming he would not have sold his minority ownership interest if the co-sellers did not remove the integration clause? And then how would he be entitled to a post-closing transaction bonus if the sale did not close? Mr. Evans needs to plead his theory of damages arising from facts allowing us to plausibly infer justifiable reliance upon a specific representation.

## III.   Conclusion

Mr. Evans seeks an order compelling Cantor to pay him a transaction bonus after he sold his minority interest in his employer insurance business based on an alleged representation Cantor would pay a bonus "proportional" to one being paid by co-seller Reservoir even though Mr. Evans contemporaneously signed a Side Letter Agreement with all sellers defining his compensation from the closing and agreeing there are no other promises or representations. We are mindful Reservoir allegedly paid him a post-closing transaction bonus notwithstanding the Side Letter Agreement. But Reservoir's decision to pay a transaction bonus does not bind Cantor. Mr. Evans cannot proceed on a promissory fraud theory, especially considering his representation of no reliance on other representations, without pleading exactly what is the representation, and who,

when, and where. Mr. Evans needs to specifically plead facts allowing us to find a plausible basis

for a promissory fraud claim including justifiable reliance and damages arising from signing the

Side Letter Agreement.

---

[1] D.I. 31 ¶ 58.

[2] *Id.* ¶ 37.

[3] D.I. 33-2 ¶ 5h.

[4] *Id.* at 9 (using the pagination assigned by the CM/ECF docketing system).

[5] D.I. 28, 29.

[6] Mr. Evans timely amended to now plead Cantor misrepresented and concealed material facts to induce him to sign the Side Letter Agreement and Securities Purchase Agreement which did not meet his understanding of Cantor's promise (at an unknown time) to pay him (or consider paying him) a transaction bonus after the Longevity sale.

[7] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our

Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[8] We are not persuaded by Cantor's other arguments. Cantor cites two clauses in the transaction agreements foreclosing Mr. Evans' fraud claim: (1) "in consideration of and in reliance upon the premises [sic] and the representations, warranties, covenants and agreements contained in this [Securities Purchase] Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby …"; and (2) "This [Side Letter] Agreement, the Securities Purchase Agreement, and the other Transaction Agreements constitute the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof." Cantor does not meet its burden at the motion to dismiss stage to show this language taken together "clearly and unambiguously" precludes Mr. Evans' reliance on alleged extra-contractual statements made before he signed the transaction documents. *See Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004). We are guided by Chancellor Strine's direction in *Kronenberg* "Delaware's public policy is intolerant of fraud." *Id.* "[F]or a contract to bar a fraud in the inducement claim, the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract. The presence of a standard integration clause alone, which does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions demonstrating with clarity that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims. Rather, in that circumstance, the defendant will remain at risk if the plaintiff can meet the difficult burden of demonstrating fraud." *Id.*

Mr. Evans alleges Cantor's counsel drafting the Side Letter Agreement knew Mr. Evans asserted a claim for approximately $1 million in additional compensation from Cantor but did not draft the Side Letter Agreement to resolve the claim. Second Amended Complaint. D.I. 31 ¶ 36. He alleges counsel did not include releases or anti-reliance provisions in the Side Letter Agreement's integration clause. *Id.* He alleges he raised Cantor's alleged earlier promises to match Reservoir's compensation before signing the Side Letter Agreement, but neither Director Pion nor Cantor's lawyers told him the Side Letter Agreement would extinguish his claims based on Cantor's promises. *Id.* ¶ 45. Mr. Evans alleges Cantor instead twice represented in writing it would consider matching Mr. Evans' compensation and Director Pion orally promised Cantor would match Reservoir's compensation. *Id.* He alleges before negotiating and drafting the Side Letter Agreement, Cantor's counsel knew he repeatedly, in writing, asserted Cantor's oral promise to match compensation from Reservoir and, having drafted the Side Letter Agreement, Cantor's counsel did not "propose or insist" the Side Letter Agreement's integration clause included language the parties "were not relying on oral representations or promises." *Id.* ¶¶ 46–47. Mr.

Evans alleges Cantor "knowingly and deliberately concealed material facts and made false representations with the intent to induce" him "to sign the Side Letter Agreement with its integration clause intact." *Id.* ¶ 69.

Mr. Evans alleges Cantor knew about Mr. Evans's claim Director Pion promised him Cantor would match the compensation received from Reservoir. Accepting these allegations as true as we must on a motion to dismiss, Cantor could have, but did not, negotiate or include anti-reliance language if it intended to preclude Mr. Evans from raising a claim for extra-contractual fraud. *See e.g., McDonalds Corp. v. Easterbrook*, 2021 WL 351967, at * 8 (Del. Ch. Feb. 2, 2021). *See also Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006) (integration clauses must contain "language that … can said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract," an "approach [which] achieves a sensible balance between fairness and equity—parties can protect themselves against unfounded fraud claims through explicit anti-reliance language") (quoting *Kronenberg*, 872 A.2d at 593) (footnote omitted). Accepting all well-pleaded allegations as true and drawing all reasonable inferences in Mr. Evans' favor and in the light most favorable to him at the motion to dismiss stage, we cannot say the two provisions cited by Cantor sufficiently confirm anti-reliance language necessary to dismiss Mr. Evans' fraud claim at this time.

We are also not persuaded by Cantor's bootstrapping theory. We deny Cantor's motion based on an argument the fraud claim is merely a rehashing of the breach of contract claims and the fraud claim is an improperly "bootstrapped" breach of contract claim. Mr. Evans concedes we dismissed his contract claims in our earlier decision granting Cantor's motion to dismiss the amended complaint. D.I. 29, 30. Vice Chancellor Slights recently examined the contours of Delaware's "anti-bootstrapping rule" in *Levy Family Investors, LLC v. Oars + Alps LLC.* 2022 WL 245543 (Del. Ch. Jan. 27, 2022). Vice Chancellor Slights characterized Delaware law on the anti-bootstrapping theory as unsettled. *Id.* at *7. Vice Chancellor Slights observed "[e]ven a cursory review of the substantial Delaware jurisprudence on [Delaware's anti-bootstrapping doctrine] reveals that 'a little bid muddled' may understate the point." *Id.* In Vice Chancellor Slight's view, Delaware's "anti-bootstrapping rule bars a fraud claim where the plaintiff merely adds the term 'fraudulently induced' to a complaint or alleges that the defendant never intended to comply with the agreement at issue at the time the parties entered into it, but it does not prevent a fraud claim against defendants who 'knew [contractual representations] were false, and yet made them anyway.'" *Id.* at *8, n. 60 (quoting *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *15 (Del. Ch. June 11, 2020) (and collecting cases) (cleaned up)). "Thus, the anti-bootstrapping rule does not prevent parties from bringing a fraud claim if (1) the plaintiff alleges the seller knowingly made false contractual representations, (2) 'damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim,' (3) 'the conduct occurs prior to the execution of the contract and thus with the goal of inducing the plaintiff's signature and willingness to close on the transaction,' or (4) 'the breach of contract claim is not well-[pleaded] such that there is no breach claim on which to 'bootstrap' the fraud claim.'" *Levy Family Investors, LLC*, 2022 WL 245543, at *8 (citations omitted) (cleaned up). Mr. Evans pleads and argues the fourth scenario; he has a separate fraud claim and cannot have "bootstrapped" a fraud claim onto the now-dismissed contract claims. Mr. Evans alleges fraud in the inducement to sign the Side Letter Agreement, not in the performance of the contract.

---

[9] *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992)).

[10] *Richard A. Schuetze, Inc. v. Utilligent, LLC*, 2022 WL 958359, at *2 (D. Del. Mar. 30, 2022) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018)).

[11] D.I. 31 ¶ 58.

[12] *Dunn v. FastMed Urgent Care, P.C.*, 2019 WL 4131010, at *9 (Del. Ch. Aug. 30, 2019) (citing *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010)).

[13] *Dunn*, at *10.

[14] *Id.* at * 2.

[15] *Id.* at *8.

[16] *Id.* at *8 (citations omitted).

[17] *Id.* (citation omitted).

[18] *Id.* at *9.

[19] *Id.*

[20] *Id.* at * 10. Vice Chancellor Zurn also found the physician failed to plead the other elements of fraud with particularity as required by Rule 9(b). *See id.* at *10–*11.

[21] 2014 WL 5025926 (Del. Ch. Sept. 30, 2014).

[22] D.I. 31 ¶ 71.